LILLIAN McELWEE *vs.* MARIETTA MAHLMAN.

Washington.   Opinion October 16, 1918.

*Deeds.   Plans.   Rule where lots are deeded according to certain plan.   Rule where the distances are given in a deed and the intention clearly gathered from the deed itself but some reference is made to a plan.   General rule to be adopted in the construction of deeds.*

This is a real action and is before the court on report.

The question at issue involves the location of the line dividing lots owned by the contending parties,—the plaintiff's south line and defendant's north line.

*Held:*

1.   The wording of the description in defendant's deed clearly shows the intention of the parties to be that the grantors were selling what they knew to be a parcel of land from lot No. 1, and not lot No. 1 as originally laid out.

2.   The use of the plan in the case, as in all cases, is limited to the one purpose as an aid to ascertain the intentions of the parties.

3.   Here the reference to the plan was solely for the purpose of locating a lot, out of which the land was deeded, and was not a part of the description of the land conveyed.   Applying the rule by which our court has been guided since its formation, that the expressed intention of the parties gathered from all parts of the instrument, giving each word its due force, and read in the light of existing conditions, must govern our action, we find for the plaintiff.

Real action to recover certain lands in the town of Lubec, Washington County.   Defendant filed plea of general issue.   At close of testimony, by agreement of parties case was reported to Law Court. Judgment for paintiff.

Case stated in opinion.
*L. H. Newcomb, and J. H. Gray,* for plaintiff.
*H. E. Saunders, and H. H. Gray,* for defendant.

SITTING: CORNISH, C. J., SPEAR, HANSON, PHILBROOK, JJ.

HANSON, J.    This is a real action, and is before the court on report.

The question at issue involves the location of the line dividing lots owned by the contending parties,—the plaintiff's south line and defendant's north line.

All the land in question was originally owned by the heirs of Patrick Gillise, late of Lubec.    Under their direction the large field comprising the estate was surveyed and divided into lots by George W. Ross, a civil engineer, whose plan of the lots in question was introduced in evidence.    The survey was made in 1902.    According to Mr. Ross' survey, Lot No. 1 was 70 feet wide on Gillise Street; lots No. 2 and No. 3 were each 50 feet wide on said street.    The lines remained as originally located until April 20th, 1904, when H. P. Gillise and Annie T. Hicks conveyed their two-thirds interest in lot No. 2 to F. N. Gillise, and in addition thereto five feet from the northerly side of lot No. 1, and at the same time changed the Ross plan by drawing a new line upon the plan representing the north line of No. 1 and south line of No. 2.    Up to this time no other conveyances had been made by the heirs.    On May 5, 1904, Frank N. Gillise purchased from Archibald J. Black a small lot 12 feet, 6 inches wide and 13 feet long, in the southeast corner of lot No. 2, to square the same.    On the same day F. N. Gillise deeded a triangular strip of land from the north side of lot No. 2, two feet wide on Gillise Street and running to a point fifty feet southeast on said north line, to Stephen Somers, the owner of lot No. 3.

The foregoing statement of title and history of the locus is presented for a better understanding of the real question involved.    It will be noted that on May 5, 1904, the rights of parties other than the heirs of P. Gillise were not brought in question.    The survey and plan had been made and used by the parties in interest; one deed between the heirs made, which involved a change in the plan.    The change in the plan was made, and on July 1st, 1904, Frank N. Gillise deeded the land thus acquired, which for the purposes of this case comprised all of the original lot numbered two, and five feet from the northerly

side of lot No. 1, to Linda M. Ingalls, who occupied the land until May 24, 1914, when she conveyed the same to the plaintiff. That deed has the following description:—"Commencing at the southeast corner of Stephen Somers' homestead lot, (Lot No. 3) thence in a course nearly south forty-seven feet and six inches to the north line of lot No. 1, as per plat of the Gillise field, so called, by Geo. W. Ross, thence westerly on said north line of lot No. 1, sixty-six feet and eight inches to Gillis Street, so called, thence northerly along said Gillise Street fifty-three feet to the homestead lot of the said Stephen Somers, thence easterly along said Somers south line sixty-eight feet to the place of beginning."

It will be noted that while the description refers to the plan made by George W. Ross, the distances given are specific, exact and deliberate, and extend the width of lot No. 2, over the Ross line and into lot No. 1, where it had been relocated by all the parties in interest after Mr. Ross had finished his survey. This we think the owners had a right to do, especially as other interests had not intervened, and assuredly so as to the defendant whose title comes from the same source, and after the new line had been established for twelve years, and had been recognized by all concerned.

The defendant acquired title through a deed from Lelia E. Gillise and Mary T. Gillise, by deed dated July 17, 1916, the description in which deed is identical with that in a deed from F. N. Gillise to them, and reads:—"A certain lot or parcel of land situated in said Lubec and more particularly bounded and described as follows, to wit, beginning at the southeasterly corner of said lot, where the westerly line, at the southwesterly corner of land owned by Charles or Mary Mulholland, of said Lubec, intersects with Main Street, so called; thence running westerly fifty-five feet, more or less, to a new street, Gillis Street, so called; thence northerly, sixty feet, more or less, to property formerly owned by F. N. Gillise, now owned by McElwee, thence easterly fifty-four feet, more or less, to said Mulholland's line; thence southerly sixty feet, more or less, to the place of beginning. Meaning and intending to convey all of my said interest in and to said parcel of land, known on a plan of the Gillise estate as lot No. 1, said plan having been drawn by George W. Ross, Civil Engineer, in 1902."

Counsel have asserted that there is ambiguity in the description, but none is perceived. On the contrary, this, the latest deed, con-

tains in the description evidence of full knowledge of the parties as to the changes made in the original plan, and the widening of lot No. 2, and consequent decrease in lot No. 1. The grantors were not deeding lot No. 1. The description clearly states that they were conveying their interest in lot No. 1, and the Ross plan was not made a part of the deed, or referred to any further than to locate a certain lot No. 1, in which they were selling all their interest. That interest was an interest in lot No. 1 on the Ross plan, as changed by the parties, before any right had been acquired by the defendant. The wording of the description clearly shows the intention of the parties to be, that the grantors were selling what they knew to be a parcel of land from lot No. 1, and not lot No. 1 as originally laid out. The description was indefinite, every mention of distance was qualified by the use of the words "more or less," and the northerly bound was "property now owned by McElwee." The language used is not ambiguous, and the defendant must be charged with knowledge of the change in the plan, and the new line by which the property "now owned by McElwee" was limited. The plan was made for the Gillise heirs. They had the right to change a line, or make smaller lots or larger ones, if they saw fit; and the rights of others were not interfered with by the change. Our duty under the report is to ascertain the intention of the parties, and so find that such intention shall be carried out. In reaching our conclusion the oral testimony has thrown some light, but the deeds introduced, especially the deed to the defendant, considered in connection with the plan, clearly establish what the oral testimony tends to show, that the defendant is limited on the north by the new line fixed by the Gillise heirs, and not by a line fixed by Mr. Ross. The use of the plan in the case, as in all cases, is limited to the one purpose, as an aid to ascertain the intention of the parties. In considering the same subject, the text of Vol. 8, R. C. L., page 1078, Sec. 134, states the law in these words: "The words of reference usually serve merely to connect the deed with the plat, so that by applying the one to the other, the former may be rendered intelligible. They give effect to the expressions of the deed, but they do not limit them. If there is that upon the face of the plat to which the expressions of the deed can apply, then the court will make the application, rather than reject the words of the deed as not expressing the intentions of the parties."

If it was the intention to convey the original lot, then it could have been done by deeding lot No. 1 as per plan, etc., or by giving the exact boundaries. This course was not taken. On the contrary the opposite course, and one which most decidedly sustains the plaintiff's contention, was taken, and was adopted by the defendant, when every line and distance was qualified by the use of the words "more or less." These words used in connection with the words "now the property of McElwee," can only imply that the defendant's north line must be the south line of the plaintiff's land, according to the deed under which she and her grantor had occupied the land many years, the bounds of which were definite and unqualified.

This is not a case where a plan is referred to as a part of a description of a lot of land. *Danforth* v. *Bangor*, 85 Maine, 423, or where a grant of land is made with reference to a plan. *Heaton* v. *Hodges*, 14 Maine, 66, and cases cited. If so referred to in a proper case the map or plan designated would become a material and essential part of the conveyance with the same force and effect as if copied into the deed. 8 R. C. L., page 1079, Sec. 135, and cases cited, including *Kennebec Purchase* v. *Tiffany*, 1 Greenleaf, 219; *Ripley* v. *Berry*, 5 Greenleaf, 24.

Here the reference to the plan was solely for the purpose of locating a lot, out of which the land was deeded, and was not a part of the description of the land conveyed. Applying the rule by which our court has been guided since its formation, that the expressed intention of the parties gathered from all parts of the instrument, giving each word its due force, and read in the light of existing conditions, must govern our action, we find for the plaintiff. *Perry* v. *Buswell*, 113 Maine, 399.

*Judgment for the plaintiff.*

*Parties to be heard in damages by the Clerk.*